UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA DEE LEACH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 2:18-cv-02001 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

////

////

////

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on February 14, 2014. Administrative Record ("AR") 204-10.[2] The disability onset date was alleged to be August 1, 2013. AR 204. The application was disapproved initially and on reconsideration. AR 133-38, 140-45. On August 3, 2016, ALJ Sheila Walters presided over the hearing on plaintiff's challenge to the disapprovals. AR 65-102 (transcript). Plaintiff, who appeared with counsel, was present and testified at the hearing. AR 67. Lorian Hyatt, a Vocational Expert ("VE"), also testified at the hearing. Id.

On December 20, 2016, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 46-59 (decision). On May 17, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-7.

Plaintiff filed this action on July 20, 2018. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 6, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 15 (plaintiff's summary judgment motion), 21 (Commissioner's summary judgment motion), 22 (reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1961, and accordingly was, at age 52, a person closely approaching advanced age under the regulations,[3] when she filed her application. AR 70. Plaintiff has at least a high school education and can communicate in English. AR 71-72.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[2] The AR is electronically filed at ECF Nos. 11.3 to 11.54 (AR 1 to 3980).
[3] See 20 C.F.R. § 404.1563(d).

2

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

IV. RELEVANT LAW

Disability Insurance Benefits are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. § 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. § 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. § 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. § 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis,

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since August 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: obesity, bilateral carpal tunnel syndrome (CTS) status post carpal tunnel release surgeries, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, chronic obstructive pulmonary disease (COPD)/asthma, neuropathy in the bilateral lower extremities, and history of hyperthyroidism status post radioiodine treatment with resulting hypothyroidism (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry five pounds frequently and ten pounds occasionally. She is able to sit for about six hours in an eight-hour workday. She is able to stand and/or walk for two hours in an eight-hour workday. She is precluded from climbing ladders, ropes and scaffolds. She is precluded from working around hazards, such as unprotected heights, machinery and dangerous equipment. She is limited to occasional climbing of ramps and stairs. She is limited to occasional balancing, stooping, kneeling, crouching and crawling. She should avoid concentrated exposure to extreme cold, fumes, odors, dusts, smoke, gases and poor ventilation. She must be permitted to change positions from sitting to standing and vice versa every ½ hour, but she is able to remain at the workstation while doing so.
>
> 6. [Step 4] The claimant is capable of performing past relevant work as a telephone receptionist (DOT# 235.662-022). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> 7. The claimant has not been under a disability, as defined in the
> Social Security Act, from August 1, 2013, through the date of this
> decision (20 CFR 404.1520(f)).

AR 48-59. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 59.

## VI. ANALYSIS

Plaintiff argues that (1) the Appeals Council improperly rejected later-submitted evidence, (2) the ALJ improperly discounted plaintiff's testimony as to the severity of her symptoms, (3) the ALJ improperly discounted the lay witness testimony of plaintiff's husband, and (4) the ALJ erred at Step 4 by finding plaintiff could perform certain past relevant work. ECF No. 15 at 9-20.

### A. Additional Evidence Submitted to the Appeals Council

Plaintiff argues that the Commissioner erred by rejecting a psychological examination by Dr. Sylvia Torrez, which plaintiff submitted after the ALJ issued her decision, as part of plaintiff's application for Appeals Council review.

As of the date of the Appeals Council's denial of review in this case, and as relevant, the Appeals Council "will review a case if . . . [s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (effective Jan. 17, 2017).[4] Paragraph (b) provides that the Appeals Council "will only consider additional evidence" if claimants "show good cause" for not offering the evidence earlier. 20 C.F.R. § 404.970(b) (effective Jan. 17, 2017). However, in this case, because the Commissioner updated the regulations while plaintiff's appeal was pending, see footnote 4, the Commissioner waived the

---

[4] This current amended version of the regulation was made effective on January 17, 2017, and compliance was required by May 1, 2017. 81 Fed. Reg. 90,987 (Dec. 16, 2016), available at 2016 WL 7242991. Like most courts, this court applies the amended regulations to Appeals Council decisions issued after the compliance date of May 1, 2017. See Bisbee v. Berryhill, No. 18-CV-0731 SMV, 2019 WL 1129459, at *3 n.4 (D.N.M. Mar. 12, 2019) (collecting cases). As the Appeals Council issued its denial in this case on May 17, 2018, the court applies the current amended regulations here.

6

"good cause" requirement for plaintiff's application, AR 32-33 (Appeals Council letter).[5] Nevertheless, as specified in the Appeals Council's letter, plaintiff was still required to show that the additional evidence was "new and material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision." AR 33; see 20 C.F.R. § 404.970(a)(5).

In August 2017, plaintiff submitted a report and medical source statement by Dr. Torrez containing the findings and opinions from her June 12, 2017 psychological evaluation of plaintiff. AR 17-28. Therein, Dr. Torrez summarized plaintiff's self-reported psychosocial history and diagnosed her with Major Depressive Disorder. AR 17-22. In her medical source statement, Dr. Torrez checked boxes indicating that plaintiff was "Not Significantly Limited" or was "Mildly Limited" in all of the listed mental impairment functional areas, except for four functions in which she was "Moderately Limited." AR 24-26.

In its May 17, 2018 letter denying review, the Appeals Council stated:

> You submitted medical records from Silva Torrez [sic], Psy.D. dated June 12, 2017 through June 29, 2017 (13 pages). The Administrative Law Judge decided your case through December 20, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 20, 2016.

AR 2. Plaintiff argues that although Dr. Torrez's examination was conducted outside the period at issue, it provides "vital support for the evidence already in the record from the relevant time period indicating Plaintiff has had a severe mental impairment for many years." ECF No. 15 at 10. The only record evidence plaintiff cites in support of this argument is a May 13, 2014 psychological evaluation by consultative examiner Dr. Randy Kolin. AR 1038-42; ECF No. 22 at 3. Dr. Kolin had also diagnosed plaintiff with Major Depressive Disorder, but had rated plaintiff as having only "mild" limitations in cognitive and social functioning. AR 1041. Based on Dr.

---

[5] Therefore, the Appeals Council was required to consider the additional evidence plaintiff submitted, and that "consideration" is subject to review by this court. See West v. Berryhill, 2019 WL 362259, at *5 (D. Haw. Jan. 29, 2019) ("Section 404.970(b) requires the Appeals Council to consider additional evidence if good cause is shown, and, here, the Appeals Council found good cause," as stated in a letter to the claimant).

Kolin's opinion and the consistent opinions of the State agency reviewing physicians, the ALJ found that plaintiff's mental impairments (depressive disorder and anxiety disorder) were not severe. AR 49-50.

The court concludes that, while the new evidence from Dr. Torrez relates to a condition—depression—considered by the ALJ, it does not relate to the time period under consideration. Dr. Torrez's assessment took place six months after the ALJ's decision in this case, and there is no indication in the report that it addresses plaintiff's functioning prior to December 20, 2016, the date of the ALJ's decision. Evidence from outside of the period between the alleged onset date and the date of the ALJ's determination is irrelevant to the extent that it does not address claimant's medical status during that period. See Fair v. Bowen, 885 F.2d 597, 600 (9th Cir. 1989). Plaintiff provides no argument as to how Dr. Torrez's evaluation bears upon Dr. Kolnin's report three years earlier, nor does she cite portions of the report that might demonstrate that Dr. Torrez was addressing plaintiff's functional ability at any time other than the date of the evaluation, well beyond the period at issue. The Commissioner did not err in rejecting Dr. Torrez's report.

B. Consideration of Plaintiff's Subjective Testimony

Next, plaintiff argues that the ALJ improperly discounted plaintiff's testimony regarding the severity of her symptoms without giving clear and convincing reasons for doing so. The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the

8

<blockquote>
severity of her symptoms only by offering specific, clear and convincing reasons for doing so.
</blockquote>

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina, 674 F.3d at 1112 (citation omitted). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, "inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (alterations in original). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959. However, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff testified to disabling limitations caused by bilateral carpal tunnel syndrome ("CTS"), chronic lower back pain, osteoarthritis in both knees, peripheral neuropathy, thyroid disorders, chronic obstructive pulmonary disease ("COPD") and asthma, and obesity. The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms "are not entirely consistent with" the medical and other record evidence. AR 57. The ALJ devoted six pages to evaluating plaintiff's subjective complaints, methodically addressing each of plaintiff's impairments. AR 51-57. In doing so, the ALJ

provided several legally sufficient reasons for discounting plaintiff's testimony.

The ALJ properly relied on clinical examinations showing good range of motion and abilities following plaintiff's CTS surgeries; normal examinations regarding plaintiff's respiratory issues; repeated documentation of plaintiff's ability to walk normally; generally conservative treatment of her conditions through physical therapy, anti-inflammatory drugs, and other medication; decrease in pain and signs of improvement or stabilization through treatment; the fact that plaintiff had reported the same severity of neuropathy before the alleged onset date; and that plaintiff reported daily activities consistent with a sedentary level of exertion. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" is inconsistent with plaintiff's reports of disabling pain); Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (substantial evidence supported ALJ's finding that claimant was not disabled where her condition remained constant for a number of years and she had worked during that time); Molina, 674 F.3d at 1112 ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"); Burch, 400 F.3d at 681 ("if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities"); Thomas, 278 F.3d at 958-59 (ALJ may rely on inconsistencies between plaintiff's testimony and testimony from physicians concerning nature, severity, and effect of plaintiff's symptoms).

Moreover, the ALJ did not entirely discredit plaintiff's allegations regarding any of her impairments, instead assigning plaintiff an extremely limited RFC of less-than-sedentary work with numerous additional limitations based on the credible portions of her testimony. See, e.g., AR 53 (noting limitations in light of CTS surgical history), 54-55 (noting limitations based on chronic lumbar and knee tenderness, painful lumbar and knee range of motion, and moderately controlled pain), 55 (noting limitations based on neuropathic symptoms), 56 (noting limitations based on symptoms secondary to thyroid medication adjustments; and limitations to avoid exacerbating respiratory symptoms). Because the ALJ provided clear and convincing reasons for discounting plaintiff's subjective complaints, there was no error.

C. Consideration of the Lay Witness Testimony

Plaintiff also argues that the ALJ erred by discounting the written testimony of plaintiff's husband, Jeff Leach. The court concurs with the ALJ that Mr. Leach's statements (AR 248-56) were duplicative of plaintiff's own subjective claims and properly discounted them for the same reasons she discounted plaintiff's claims. AR 57, 248–56; see Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ may reject lay witness testimony if it is based on or similar to a claimant's testimony that has been properly discounted).

D. Step 4: Plaintiff's Ability to Perform Past Relevant Work

Finally, plaintiff presents two arguments as to why the ALJ should have found her unable to perform past relevant work at Step 4. First, plaintiff contends that the ALJ erred by finding that plaintiff could perform past work as a telephone receptionist because answering phones was only one aspect of a past "combination job" that she held. Leaving aside the Commissioner's position that plaintiff waived this argument by not raising it before the agency, the court find's plaintiff's argument unsupported by the record evidence.

"Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Social Security Ruling 82-61, available at 1982 WL 31387. "Generally, an ALJ may not find a claimant capable of performing his or her past relevant job, if the claimant is not capable of performing *all* of the duties of that job." Armstrong v. Sullivan, 814 F. Supp. 1364, 1372 (W.D. Tex. 1993) (emphasis in original). Plaintiff argues that her work as a telephone receptionist was a temporary part of a more demanding job as a cashier, and the ALJ improperly treated it as a stand-alone position.

Upon careful consideration of the hearing transcript and plaintiff's work-history records, the court concludes that plaintiff did not work a composite cashier/telephone receptionist job as she now contends. Rather, the record shows that plaintiff worked as a cashier at Home Depot from 2005 until her first carpal tunnel surgery in April 2013. AR 77. When she returned, she worked a "modified work schedule" in which she "sat and answered phones" in Home Depot's "phone center" for about four weeks. AR 78. After returning from her second carpal tunnel surgery, in June 2013, plaintiff continued working in the phone center for about a month, "doing

11

what the person in a phone center usually does." AR 78-79, 96. Plaintiff testified that, in total, she worked in the phone center for approximately three months. AR 79. The vocational expert ("VE") opined that plaintiff had worked long enough in the phone center position for it to qualify as past relevant work as a telephone receptionist, DOT 235.662-022, a sedentary occupation with an SVP of 3. AR 97 (noting that SVP of 3 requires over one month, up to and including three months of experience). The court has found, and plaintiff identifies, nothing in the record to indicate that plaintiff performed both cashier and telephone receptionist duties simultaneously. Plaintiff's testimony establishes that she worked a separate job as a telephone receptionist, albeit for a short while. The ALJ therefore properly found that role constituted past relevant work.

Plaintiff's second Step-4 argument is that the ALJ erred by failing to include any manipulative limitations in plaintiff's RFC or the hypotheticals to the VE, despite finding at Step 2 that plaintiff's bilateral CTS was a severe impairment. Specifically, plaintiff contends that the ALJ's decision is internally inconsistent because "either the carpal tunnel syndrome significantly limits Plaintiff's ability to do basic work activities or it is not a severe impairment." ECF No. 15 at 18.

It is true that in order to qualify as a "severe" impairment, the impairment must significantly limit one's ability to perform basic work activities. 20 C.F.R. § 404.1521 (2016). "If an ALJ finds a severe impairment at step two, that impairment must be *considered* in the remaining steps of the sequential analysis." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (citing 20 C.F.R. §§ 404.1523, 416.923) (emphasis added). However, "the ALJ was not required to include limitations in Plaintiff's residual functional capacity simply because she determined that carpal tunnel syndrome was a severe impairment at step two." Baka v. Berryhill, No. 17-CV-06114-SK, 2018 WL 6267853, at *8 (N.D. Cal. Nov. 8, 2018). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "[T]he ALJ is not required, as a matter of law, to include all the limitations from the impairments the ALJ deems to be severe at step two in the ALJ's final RFC analysis." Gunderson v. Astrue, 371 Fed. Appx. 807, 809 (9th Cir. 2010) (unpublished); see Bray, 554 F.3d at 1228-29 (rejecting plaintiff's argument that a severe

12

impairment by definition inhibits performing basic work activities, and the ALJ's RFC did not capture that limitation).

In her RFC assessment, the ALJ considered the medical evidence of plaintiff's CTS, found that plaintiff responded well to surgical intervention, and explicitly found that plaintiff therefore had no manipulative limitations. AR 53, 57. Accordingly, there was no error in omitting manipulative limitations from plaintiff's ultimate RFC or the hypotheticals to the VE.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21), is GRANTED;

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: September 3, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE